UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION

| | | |
|---|---|---|
| GENEVA PORTER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7: 04-339-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| JO ANNE BARNHART, Commissioner | ) | **MEMORANDUM OPINION** |
| of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Geneva Porter and Defendant Jo Anne Barnhart, Commissioner of Social Security ("Commissioner"). [Record Nos. 7, 8] Through this action, Porter seeks to reverse the decision of an administrative law judge ("ALJ") concluding that she was not entitled to Supplemental Security Income benefits. However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Porter.

**I.    LEGAL STANDARD**

A claimant's Social Security disability determination is made by an ALJ in accordance with a five-step analysis. If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. First, a claimant must demonstrate that he is not currently engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 416.920(b). Second, a claimant must show that he suffers from a severe

impairment. 20 C.F.R. § 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months, which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the Claimant's residual function capacity ("RFC") and relevant past work to determine if he can do past work. If he can, he is not disabled. 20 C.F.R. § 416.920(f).[1]

Under the fifth step of this analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education and past work experience to determine if he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lashley v. Sec'y of Health and Human Services*, 708 F.2d 1048, 1053 (6th Cir. 1983). While significant deference is accorded to the ALJ, the standard employed in these cases does not permit a

---

[1] Pursuant to 68 Fed. Reg. 51153, 51161-62, the Commissioner has changed the lettering of the relevant Code of Federal Regulations. What was previously 20 C.F.R. § 416.920(e) and (f) are now 20 C.F.R. § 416.920(f) and (g), respectively.

selective reading of the record. Instead, "substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must be taken into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Garcia v. Sec'y of Health and Human Services*, 46 F.3d 552, 555 (6th Cir. 1995); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Casey v. Sec'y of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Smith v. Sec'y of Health and Human Services*, 893 F.2d 106, 108 (6th Cir. 1989). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

In determining whether the ALJ's opinion is supported by substantial evidence, courts may not "try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). It is the job of the ALJ to make credibility findings after listening to testimony, observing the claimant's demeanor, and evaluating the testimony in light of the written evidence. Credibility determinations are particularly within the province of the ALJ. *Gooch v. Sec'y of Health and Human Services*, 833 F.2d 589 (6th Cir. 1987); *Villarreal v. Sec'y of Health and Human Services*, 818 F.2d 461, 464 (6th Cir. 1987).

## II.     PROCEEDINGS BEFORE THE ALJ

On November 7, 2000, an administrative hearing was held before ALJ David Daugherty in Prestonsburg, Kentucky. During this hearing, the ALJ heard testimony from Porter. Thereafter, he issued a decision denying her request for Supplemental Security Income benefits. In support of his determination, the ALJ concluded that Porter did not have a severe impairment, ending his analysis at step two, pursuant to 20 C.F.R. § 416.920(c). [Transcript ("Tr."), p. 20]

## III.    DISCUSSION

Under the applicable regulations, Porter has the burden to persuade the Commissioner that she suffers from a severe impairment before she may receive the requ. However, as noted above, the ALJ determined that Porter did not suffer from such an impairment. *Casey*, 987 F.2d at 1233. An impairment is "not severe" if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.921(a). Basic work activities include:

> the abilities and aptitudes necessary to do most jobs. Examples of these include --
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 416.921(b).

The Sixth Circuit has noted that dismissal at the second step of the analysis is appropriate only if the claimant has "a slight abnormality that minimally affects work ability regardless of

age, education or experience." *Higgs*, 880 F.2d at 862. In the present case, the Claimant alleges that she is disabled due to being overweight, having problems with her feet and legs, back pain, depression, nerves, ulcers, short attention span and a low platelet count. The ALJ considered all of these complaints but determined that none of these alleged impairments were severe after considering the medical evidence of record and the Claimant's subjective complaints. [Tr., pp. 17-20]

Through this action, Porter has not raised a specific objection to the ALJ's determination that she did not suffer from any severe impairments. However, in order to address Porter's specific arguments, the Court must consider whether the ALJ erred in finding that Porter was not suffering from any severe impairments. Thus, in addition to the issues raised by Porter, the Court has also evaluated whether substantial evidence supports the ALJ's conclusion that none of Porter's impairments were "severe."

A. *Credibility Determination*

First, Porter complains that the ALJ did not ascribe complete credibility to her subjective allegations of pain. In evaluating a claimant's credibility, the Sixth Circuit has recognized that a reviewing court should be "particularly reluctant" to substitute its judgment for that of the ALJ, since the ALJ has "seen the claimant in the flesh" and has had the opportunity to observe his or her demeanor. *Gooch*, 833 F.2d at 592. Therefore, the reviewing court "should show deference to the decision of the administrative law judge in assessing credibility." *Tyra v. Sec'y of Health and Human Services*, 896 F.2d 1024, 1028 (6th Cir. 1990). Further, "the ALJ is not obligated

to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Sec'y of Health and Human Services*, 39 F.3d 115, 118 (6th Cir. 1994).

As the ALJ concluded in the present case, the medical evidence does not substantiate Porter's claims of disabling pain. The ALJ appropriately considered Porter's live testimony and whether it was corroborated by the medical record. Because some of her complaints were unsubstantiated, the ALJ was within his discretion in discounting some of Porter's testimony.

        B.    *Improper Hypothetical*

Porter includes a subheading "The ALJ failed to pose a complete hypothetical question to a Vocational Expert that accurately described the Plaintiff's inability to fully maintain regular attendance and maintain other work requirements given her ailments." [Record No. 6, pp. 15-16] However, in the discussion following this heading, Porter acknowledges that the ALJ did not request the testimony of a Vocational Expert at the administrative hearing and, therefore, did not develop a hypothetical question. Because the ALJ determined that Porter did not suffer from any severe impairments, he did not use the testimony of a VE in order to determine Porter's disability status. Notwithstanding this fact, Porter argues that the ALJ should have elicited the testimony of a VE and that his failure to do so warrants reversal of the ALJ's decision.

In order to determine whether the ALJ should have relied on the testimony of a VE, the Court must first resolve whether the ALJ erred in finding that Porter did not have any severe impairments. Pursuant to 20 C.F.R. § 416.920, an ALJ must perform a five step evaluation to determine whether a claimant is entitled to disability benefits. In the instant case, the ALJ determined, at step two, that Porter did not possess a "severe impairment." At this stage of the

disability analysis, if a claimant does not have a severe impairment, the claimant cannot be found to be disabled. Thus, there was no need for the ALJ to elicit or rely on the testimony of vocational expert.

A VE is useful when an ALJ, at step five, must consider a claimant's RFC, age, education and past work experience and determine if he/she can perform other work. Here, the ALJ considered each of the Claimant's alleged impairments and the medical evidence of record related to those impairments and concluded that Porter's impairments were non-severe. Inasmuch as the inquiry ended at step two, the ALJ determined that the testimony of a VE was not necessary.

The objective medical evidence of record supports the ALJ's findings that Porter was not suffering from a "severe" impairment. Specifically, the opinions of Drs. Joseph Grady and Stephen Nutter support the ALJ's conclusion that Porter was not suffering from a severe *physical* impairment. Specifically, with respect to Porter's complaints of back pain, the ALJ noted that:

> The claimant presented with a history of back pain. She only made one complaint to her treating physician in March 1998, which resulted in a very mild x-ray of the thoracic spine. On consultative evaluation in April 2000 by Joseph Grady, M.D., the claimant made no complaints of back pain and completed a normal musculoskeletal exam. On consultative evaluation in May 200 by Stephen Nutter, M.D., the claimant had complaints of chronic lower back pain, but was not sure how long it had been going on. Dr. Nutter diagnosed the claimant with chronic dorsal strain. On exam, there was some tenderness of the dorsal paraspinal muscles and range of motion of the spine was normal except for mild range of motion limitation of the lumbar spine, but that was mainly due to pain in her stomach when bending. Dr. Nutter could not elicit any deep tendon reflexes in the lower extremity and noted that that (sic) was not pathologic. The claimant was able to walk on heels and toes and was able to perform tandem gait.

[Tr., p. 18] Although Porter argues that the ALJ erred in not relying on the findings of Dr. Richard Sheridan, the Court notes that the ALJ considered Dr. Sheridan's opinion and decided to give more weight to the findings of Drs. Grady and Nutter. Specifically, the ALJ noted that medical evidence of record indicated that Porter had only had one back complaint in March 1998 and had not received any treatment for her back since that date. Based on this evidence, it was within the ALJ's discretion to discount Dr. Sheridan's conclusions.

The ALJ also stated that there was no mention of Porter's problems with her feet, legs and gastroesophageal reflux disease in the medical records. As such, the ALJ concluded that "these diseases are not expected to significantly impact [Porter's] ability to do basic work-related tasks." [Tr., p. 19]

With respect to the alleged *mental* impairment, the ALJ noted that Porter had received treatment at the Mountain Comprehensive Care Center for depression from February 1994 to June 1995. However, in 1995, she was terminated for service because she did not return. In 2000, Porter was again treated at the center for a major depressive disorder. However, as noted in the ALJ's opinion, her treatment lasted only 2 months. In addition, the findings of Dr. Jack Eardley and Dr. James Dumas, who performed consultative psychiatric examinations on Porter, support the ALJ's conclusion that Porter's mental impairment was not severe. It is also apparent that the ALJ adopted the state agency reviewing psychologist's opinion that Porter's mental deficiencies were based on her lack of motivation and not a mental impairment that imposed significant work-related limitations. Thus, there was substantial evidence from which the ALJ

could have concluded that Porter did not suffer any type of severe physical or mental impairment.

In addition, ALJ concluded that Porter's physical and mental impairments were not severe based on Porter's own testimony, including her statements in the Activities of Daily Living Questionnaire. Specifically, the ALJ noted that:

> I find the claimant's credibility to be poor. The claimant testified that crowds bother her (five to six people). However, she goes to the store and to church. She noted in an Activities of Daily Living Questionnaire that her husband and daughter do the household chores. However, she testified that she does some household chores. In Exhibit 16F it was noted that the claimant reported that she does no eat because her stomach hurts; however, she was obese and did not appear to have lost any weight according to her. The claimant last saw her treating physician, Sarah Belhasen, M.D. in Jun 2000. She testified that she takes Xanax and Paxil for her nerves and reported to Dr. Sheridan that she takes various medications. However, I can find only one report from Dr. Dumas, where he prescribed Paxil in June 2000. The claimant saw Dr. Belhasen only on one occasion, according to the medical records. As noted above, the evidence shows no severe restriction in her activities of daily living. She visits, goes shopping and has no difficulty taking care of her personal needs. On consultative evaluation, the claimant had no impaired ability to relate to the examiner and there was no evidence of deterioration in personal habits.

[Tr., p. 20]

Based on the objective medical evidence, Porter's testimony and her Activities of Daily Living report, the Court cannot conclude that it was error for the ALJ not to elicit or rely on the testimony of a vocational expert.

        C.    *Combined Impact of Impairments*

Porter also argues that the ALJ did not consider the combined effects of all of her alleged ailments. As discussed *supra*, however, the ALJ conducted a thorough analysis and properly

considered all of the evidence. In particular, it is apparent that he considered the Claimant's physical and mental impairments in combination.

### D.     *Referral for Mental Examination*

Porter asserts that the ALJ should have referred her for an additional mental examination in order to have her IQ tested. With respect to this issue, Porter has failed to make any sort of legal argument. In addition, she has not offered any reasons why this additional mental examination was necessary. Therefore, the Court cannot conclude that it was error for the ALJ to not make this referral.

### E.     *Lupus*

Porter's final argument relates to her diagnosis of Lupus. Specifically, Porter notes that she was diagnosed with Lupus in 2002 and, based on that fact, she argues that this action should be remanded to allow the ALJ to "recogniz[e] this illness." [Record No. 6, p. 19] In addition, Porter asserts that "the record is no specific enough on whether this is the sort of Lupus that can be fatal." [Record No. 6, p. 18] The Commissioner points out that, although a significant amount of Porter's medical records relate to her low blood count, she has failed to allege how this condition affects her ability to perform work. In fact, although Porter states that she has had a low platelet count for a number of years, she has not alleged with any certainty that this condition is the result of Lupus. Rather, she simply states that the low platelet count "*could* be contributory to the Lupus." [Record No. 6, p. 18] Inasmuch as Porter has failed to make any allegation either before this Court or before the ALJ that Lupus and/or a low platelet count limits

her ability to perform work-related activities, this Court is unpersuaded that the ALJ's decision should be reversed on this ground.

### IV. CONCLUSION

After reviewing the briefs submitted by the parties and the record before the ALJ, it is clear that the ALJ's opinion was supported by substantial evidence. Accordingly, it is hereby

**ORDERED** as follows:

(1) Claimant's Motion for Summary Judgment [Record No. 7] is **DENIED**;

(2) The Commissioner's Motion for Summary Judgment [Record No. 8] is **GRANTED**; and

(3) The administrative decision will be **AFFIRMED** by separate judgment entered this date.

This 26th day of September, 2005.



Signed By:
*Danny C. Reeves* DCR
United States District Judge